IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


SHAYE WARNER                                                    PLAINTIFF

     v.                              Civil No.  16-5020

DEPUTY D. WISER; DEPUTY
D. TRIMMEL; DEPUTY N. TUCKER;
and DEPUTY FRANKS                                             DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Shaye Warner, pursuant to 42 U.S.C. §

1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas

Department of Correction (ADC).  The events at issue in this case occurred while Plaintiff was

incarcerated in the Benton County Detention Center (BCDC).  Plaintiff maintains the Defendants

failed to protect him from attack by fellow inmates.

Defendants have filed a Motion for Summary Judgment (Doc. 28).  On December 13,

2016, a hearing was held to allow the Plaintiff to testify in response to the motion.  At the

conclusion of the hearing, the motion was taken under advisement pending preparation of this

report and recommendation.

## I.  BACKGROUND

Plaintiff was booked into the BCDC on December 5, 2014, and he remained incarcerated

there until his transfer to the ADC on February 5, 2016.  Defendants' Exhibit (hereinafter Defts'

-1-

AO72A
(Rev. 8/82)

Ex.) A-1 at 8 & 73.[1]  Plaintiff is a sex offender.  Id. at 14.  It is the policy of the BCDC to

separate inmates incarcerated for sex related offenses from other inmates to protect the health

and safety of all inmates.  Defts' Ex. A-5 at 46-47.

The first incident occurred on August 7, 2015, and it involved fellow inmate Darrel

Christy and Deputy Wiser.  There is a video exhibit of this incident.  Defts' Ex. A-6.  Plaintiff

asked via intercom to use his inhaler.  His inhaler was kept at pod control.  Defts' Ex. B at 23.[2]

Plaintiff has had a history of asthma since he was about 15.  Id. at 9.

Plaintiff was on lock-down, and his cell was on the top tier of the pod.  Defts' Ex. B at

25.  In the video, Plaintiff's cell is unlocked, and he is seen walking down the stairs to go to the

pod door to use the inhaler.  Defts' Ex. A-6.  The non-sex offender inmates were on recreation

in the day-room of the pod.

One of the inmates on recreation, Christy, had, according to the Plaintiff, been repeatedly

calling the Plaintiff a child molester since the day before.  Plaintiff did not say anything to the

guards about this.  Defts' Ex. B at 29.  When Plaintiff asked to use his inhaler, he saw that

Christy was downstairs.  Id. at 27.

When Plaintiff began coming down the stairs, Christy began "to run his mouth and

everything, calling me child molester and baby raper and stuff like that."  Defts' Ex. B at 26.

Plaintiff testified that Christy was trying to "antagonize him and get him to do something."  It

apparently worked, because the Plaintiff approached Christy and told him "to say it to my face."

Plaintiff referred to this as "checking" Christy.  Plaintiff testified he was not trying to get

---

[1]Page citations are to the jail file number located at the bottom center of the page not to the cm/ecf page number.

[2]This exhibit is the Plaintiff's deposition.  Page citations are to the deposition page number.

AO72A
(Rev. 8/82)

Christy to do anything; instead, Plaintiff just wanted to know if Christy would say it to Plaintiff's face when Plaintiff was not locked behind a cell door.  Plaintiff testified he wanted to know if Christy would "own it."

In response, Christy threw a punch and hit the Plaintiff on the right side of the head.  This was followed by a number of punches made by both Christy and Plaintiff.  This all happened in a matter of seconds.

Plaintiff testified he could have easily walked toward Deputy Wiser instead of walking toward Christy.  Plaintiff testified that Deputy Wiser was aware of Plaintiff's status as a sex offender and that non-sex offender inmates were on recreation in the day-room.  Given this, Plaintiff contends Deputy Wiser put him in a position of a substantial risk of harm.

Deputy Wiser responded by approaching the inmates.  As he does, Christy immediately stops fighting.  Deputy Wiser took the Plaintiff to the floor.  Both inmates were charged with disciplinary violations, found guilty, and put in punitive confinement.  See e.g., Defts' Ex. A-3 at 122; Defts' Ex. B at 38.

Deputy Wiser completed an incident report that provides as follows:

At approximately 0908 hours, inmate Warner, Shaye (OCA#98974) called via intercom that he needed his inhaler.  As soon as Warner's inhaler was located, I took it to the E-103 door and asked Deputy Hobelmann to open cell E222 (Warner's cell).  I asked the inmates that were out for recreation if any of them had any issues with Warner.  They all stated that they were all ok with him. Warner walked down the stairs, then directly toward inmate Christy, Darrell (OCA#86509).  I heard Warner say to Christy, "What's up man?"  Let it be known, Warner's demeanor was not threatening at this point.  Warner then began saying, "Talk shit now, talk some shit now" repeatedly.  Warner's tone became threatening in nature.  I observed Christy punch Warner in the face.  Warner responded with punches to Christy.  I separated both inmates as I called for assistance via the radio.  I told Christy to get on the floor as I placed Warner on the floor.  Responding deputies arrived and told the remaining inmates that were

-3-

> on rec to get on the floor.  I placed handcuffs on Warner and double locked them
> for his safety.  Deputy Lara and I escorted Christy to the nurse's station where he
> was treated . . . for wounds he sustained during the incident.  Later that day,
> Inmate Andrews, Robert (OCA#107784) stated, "Man, just so you know, Christy
> was talking shit all day to Warner.  After long enough, Warner said alright man,
> just wait until your next recreation man."  I informed Warner and Christy that I
> would be locking them down for an A-2 infraction (Fighting), pending a
> disciplinary hearing.  Warner was rehoused in E-102, Cell E218.  Warner was
> seen by the nurse and released back to his cell.

Defts' Ex. A-3 at 123.

As a result of the blow to the right side of his head, Plaintiff testified his ear was swollen,

ringing, and he could not hear for awhile.  Additionally, his hand was swollen, but an x-ray

showed no broken bones.  Defts' Ex. A-2 at 85-86.  Plaintiff was given Ibuprofen and an ice

pack for his hand and ear.  He received no further treatment either at the BCDC or once he was

at the ADC.

He did testify that his pinky finger on his right hand still "locks up" on him on occasion.

Because of this, Plaintiff testified he found it hard to write anything.  Plaintiff has not requested

any treatment for his finger.

On September 7, 2015, Plaintiff submitted a grievance about Deputy Wiser's violation

of proper safety procedure on August 7, 2015.  Defts' Ex. A-4 at 186.  Plaintiff noted he had

been let out of his cell when non-sex offenders were on recreation.  Id.  Plaintiff was told Deputy

Wiser's supervisor would look into it.  Id.

Plaintiff testified he was on administrative segregation which meant he was in his cell

most of the time.  He was allowed out of his cell for recreation with other sex offender inmates.

There had been no problems on other occasions when he had been let out of his cell to use his

inhaler.

-4-

Plaintiff, however, testified that there had been other verbal altercations between him and non-sex offender inmates. Plaintiff testified that he feared for his safety when the sex offender and non-sex offender inmates were not kept separately. More specifically, Plaintiff recalled the following incidents:

(1) September 7, 2015, when Plaintiff was let out of his cell to use his inhaler, Deputy Franks let Inmate Mauldin[3] out of his cell. Plaintiff complained "[t]his is a violation of the jails safety procedures and protocalls seeing as how I'm a sex offender and it's a risk to my safety." Defts' Ex. A-4 at 189. Plaintiff testified he had no problems personally with Inmate Mauldin, except he would call them child molesters and tell them they had no rights. Defts' Ex. B at 54. Plaintiff did not feel there was a reason to be concerned about his safety with Inmate Mauldin. Id.

(2) September 8, 2015, when Deputy Tucker let Inmate Mauldin out of his cell when the Plaintiff's cell door was open because his cellmate, also a convicted sex offender, was out of the cell for med call. Defts' Ex. A-4 at 189; see also Defts' Ex. B at 53.

(3) September 9, 2015, when Deputy Vasquez[4] let Inmate Mauldin out of his cell when Plaintiff and his cellmate were at med call. Plaintiff stated he "went around the stairs to avoid confrontation." Defts' Ex. A-4 at 189. Plaintiff filed his first grievance regarding these incidents on September 10, 2015. Defts' Ex. B at 58-59.

(4) during the week of September 27, 2015 to October 3, 2015, Deputy Trimmel and an unknown deputy placed two non-sex offender inmates in Plaintiff's cell unattended. Plaintiff contends this put his safety at risk. Plaintiff noted the one inmate had been moved three times. Id. at 201. The first non-sex offender inmate was in the cell with Plaintiff for approximately five minutes before the mistake was recognized. Defts' Ex. B at 63-64. The second non-sex offender inmate was in the cell for approximately ten minutes before the mistake was recognized. Id.

---

[3] In Plaintiff's deposition, Defts' Ex. B, this inmate's name is listed as Molden.

[4] Deputy Vasquez was terminated as a Defendant on December 6, 2016 (Doc. 35). The Court had no valid service address for him.

## II.  APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." <u>National Bank of Commerce v. Dow Chemical Co.</u>, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." <u>National Bank</u>, 165 F.3d at 607 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." <u>Id.</u> (citing <u>Metge v. Baehler</u>, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  DISCUSSION

Defendants have moved for summary judgment on the following grounds: (1) Deputy Wiser did not fail to protect the Plaintiff; (2) there was no constitutional injury caused by the remaining Defendants; (3) Defendants are entitled to qualified immunity; and, (4) there is no basis for official capacity liability.

-6-

### A.  Failure to Protect

"Prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  Holden v. Hirner, 663 F.3d 336, 340-41 (8th Cir. 2011) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  To prevail on his failure to protect claim, Plaintiff must first prove he was "incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  "This is an objective requirement to ensure the deprivation is a violation of a constitutional right."  Holden, 663 F.3d at 341 (citation omitted).  Second, Plaintiff must "establish the prison officials were deliberately indifferent to inmate health or safety.  This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded an excessive risk to inmate health or safety."  Id. (citation and internal quotation marks omitted); see also Young v. Selk, 508 F.3d 868, 870-73 (8th Cir. 2007) (discussing potential for substantial risk where inmate told officials of cellmate's threats, requested to be removed from cell immediately, said it was an emergency, and was subsequently attacked).

In this case, Plaintiff has failed to establish that there are genuine issues of material fact with respect to his failure to protect claim.  Plaintiff was housed separately from non-sex offenders.  When he was on recreation, he was alone as he was the only sex offender in the pod. Defts' Ex. B at 31.  Non-sex offenders had recreation at a separate time.  Plaintiff testified he had previously been allowed out to use his inhaler without incident.  Defts' Ex. A-2 (used inhaler in excess of seventy times); Defts' Ex. B at 30 & 41.  Plaintiff had not reported Christy's calling him a child molester the night before.  Id. at 29 & 41.  Plaintiff was the one who approached Christy.  Id. at 28.  Plaintiff could have continued towards Deputy Wiser.

AO72A
(Rev. 8/82)

There is no evidence suggesting that: the jail staffing was inadequate; an atmosphere of violence existed; Plaintiff or any other sex offenders had requested protection from other inmates; Plaintiff had voiced any concerns for his safety; Plaintiff or other sex offenders were frequently in the presence of non-sex offenders when guards were not present; or, there were incidents when sex offenders were being attacked by other non-sex offender inmates.

The evidence presented is insufficient to create a genuine issue of material fact as to whether Plaintiff was incarcerated under conditions posing a substantial risk of serious harm. Similarly, the evidence presented is insufficient to create a genuine issue of material fact as to whether Deputy Wiser knew of and was deliberately indifferent to an excessive risk of danger. In fact, Plaintiff testified he did not believe the Defendants were intentionally trying to place him in danger, but he did believe they were negligent.  See e.g., Defts' Ex. B at 67.  Negligence is clearly insufficient.  Deputy Wiser is entitled to summary judgment in his favor.

There is even less evidence to support failure to protect claims against Deputy Trimmel, Deputy Tucker, and Deputy Franks.  With respect to each of the remaining Defendants, Plaintiff points to a single incident during which he states he feared for his safety and was psychologically harmed.  Plaintiff does not, however, suggest that he previously had problems with any of the non-sex offender inmates he was placed in close proximity to.  He does not suggest they threatened to harm him in anyway.

Other than his mere status as a sex-offender, he points to nothing to suggest he was incarcerated under conditions posing a substantial risk of serious harm.  Instead, Plaintiff appears to believe that anytime he, a sex offender, is placed in close proximity to a non-sex offender, a

-8-

failure to protect claim is established.  This is simply not the law.  Deputy Trimmel, Deputy Tucker, and Deputy Franks are entitled to judgment in their favor.

### B.  Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity.  See e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### C.  Official Capacity Liability

A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997).  "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences."  Moyle v. Anderson, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted); Jenkins v. County of Hennepin, 557 F.3d 628, 633 (8th Cir. 2009) (Plaintiff must point to "any officially accepted guiding principle or procedure that was constitutionally inadequate.").

I agree that the Plaintiff has failed to assert a cognizable official capacity claim.  He has not suggested the existence of any policy, practice, or custom that caused the alleged failure to protect.  In fact, he believes the Defendants violated detention center policy.  Defts' Ex. B at 39. Defendants are entitled to judgment in their favor on the official capacity claim.

-9-

## IV.  CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (Doc. 28) be **GRANTED and this case be DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of March, 2017.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-10-